UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSHUA N PENNINGTON, | |
| Petitioner, | |
| v. | Case No. 3:23-CV-186 JD |
| UNITED STATES OF AMERICA, | 3:21-CR-58 JD |
| Respondent. | |

**OPINION AND ORDER**

Joshua Pennington pled guilty to one count of violation of 18 U.S.C. § 2422(b) in July 2021 and was thereafter sentenced by this Court. In his criminal proceeding, he was represented by attorney Brett Gibson. Mr. Pennington now alleges Mr. Gibson provided ineffective assistance of counsel. Mr. Pennington further argues the facts of conviction and asserts that the federal proceeding, in tandem with two state proceedings for similar but distinct conduct, constitutes a violation of his rights under the Double Jeopardy Clause. None of these arguments are supported by allegations of specific fact entitling him to relief. Therefore, the Court denies Mr. Pennington's § 2255 petition.

**A. Factual Background**

On July 21, 2021, Mr. Pennington pled guilty to one count of using a facility and means of interstate commerce to knowingly transport a minor to engage in a sexual activity for which a person could be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b). Mr. Pennington was represented in his guilty plea by Mr. Brett Gibson. An information was filed on June 21, 2021; Mr. Pennington filed his plea agreement the same day. The plea agreement was

signed by Mr. Pennington and Mr. Gibson. The plea agreement waived Mr. Pennington's right to appeal or contest his conviction or sentence on all grounds except ineffective assistance of counsel. (DE 2-1 at 7.) On July 21, 2021, Mr. Pennington signed a consent to plea before U.S. Magistrate Judge Gotsch (DE 11) and pled guilty to Count One before Judge Gotsch (DE 8). He also filed a waiver of indictment. (DE 10.) On February 24, 2022, Mr. Pennington was sentenced to 136 months and ten years of supervised release. (DE 27.) Mr. Pennington was credited for 13 months' time served, and the resulting sentence of 123 months was imposed concurrently to his Indiana sexual misconduct sentence. (DE 28.) Mr. Pennington waived his right to appeal in his plea agreement (DE 2) and did not directly appeal his sentence. On March 2, 2023, he filed a motion to vacate under 28 U.S.C. 2255 (DE 30), and the Government responded (DE 41). Mr. Pennington also requested his attorney file. The Court granted his request and ordered counsel to produce the file. (DE 45.) In its order, the Court granted Mr. Pennington leave to amend his petition based on evidence discovered in the file by August 18, 2023, and cautioned him that failure to amend would result in the Court deciding the original petition without further notice. Counsel and Mr. Pennington indicate he received the file (DE 46; DE 47), but Mr. Pennington has not amended his petition, and the time to do so has passed.

  Relevant to this appeal, Mr. Pennington had a history of state prosecutions at the time of sentencing. Mr. Pennington was first arrested for sex crimes against a minor on January 5, 2019: that arrest ultimately ripened into convictions in Indiana state court and this federal court. In the interim between the January 2019 arrest and his federal conviction, Mr. Pennington was charged, pled guilty, and completed a state sentence in Kentucky. Mr. Pennington was arrested in Kentucky on February 14, 2019, for use of an electronic communications systems to induce a minor to commit a sexual offense. *See* Kenton Circuit Court First Division, Case No. 19-CR-513.

He pled guilty, and on January 7, 2020, he was sentenced to two years prison. On February 20, 2021, he completed his Kentucky sentence and was transported from Kentucky to Indiana to face charges in Indiana. On June 3, 2021, Mr. Pennington was sentenced to fourteen years in Indiana state court for one count of sexual misconduct with a minor twelve years of age and possession of child pornography; this conviction arose from the original January 2019 arrest. *See* Tippecanoe Superior Court, Case No. 79D01-1901-F1-000001. He was serving his Indiana sentence at the time of his federal sentencing, and his earliest possible release date in his Indiana state case is February 5, 2031. (DE 5.)

The underlying offense in Mr. Pennington's § 2422(b) conviction was a violation of Indiana Code § 35-42-4-9(a)(1), which criminalizes sexual conduct by an adult with a minor less than 16 years of age. On January 5, 2019, a Lafayette Police Officer approached a suspicious parked car behind a church in Lafayette, Indiana. The occupants, Mr. Pennington, then 26, and Jane Doe, 13, were naked from the waist down. Later interviews of Ms. Doe revealed Mr. Pennington met Ms. Doe on an online dating app, where he represented to be a 13-year-old boy. Mr. Pennington had traveled from his home in Ohio on several prior occasions to visit Ms. Doe and had previously engaged in sexual conduct with her, though they had not previously had sexual intercourse. On the morning of January 5, Mr. Pennington and Ms. Doe were engaged in sexual intercourse when Ms. Doe told him that it hurt and to stop, but he said it would be okay. Their intercourse was interrupted by the police officer. Mr. Pennington also met and had sexual contact with two other preteen girls, a 13-year-old in Minnesota and a 12-year-old in Kentucky, who he also met on dating and texting apps. Officers believed Mr. Pennington used his work as a traveling salesman as a vehicle to connect with and engage in prohibited sexual conduct with

various minors, noting his phone contained thousands of sexual pictures, many of which appeared to be child pornography and many contacts that appeared to belong to young girls.

### B. Legal Standards

#### *(a) Section 2255*

Section 2255(a) of Title 28 provides that a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted). Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo*, 467 F.3d at 1068). A court may also deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

#### *(b) Ineffective Assistance of Counsel*

The Sixth Amendment provides a criminal defendant with the right to counsel, U.S. Const. amend. VI, and "inherent in this right is that the defendant is entitled to the effective assistance of counsel." *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009). In order to prevail on his claim for ineffective assistance of counsel, a person must establish (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first prong of the *Strickland* analysis requires that the Court determine if counsel acted "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Koons*, 639 F.3d at 351 (*citing Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011)). Furthermore, the Court "maintain[s] a strong presumption that the defendant received effective assistance," *Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003), and that the challenged conduct "might be considered a sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation omitted).

**C. Evidentiary Hearing**

Mr. Pennington has requested an evidentiary hearing. (DE 30 at 25.) As there are no material facts in dispute in this case and Mr. Pennington is entitled to no relief as a matter of law, no evidentiary hearing is required. A court must hold a hearing on a § 2255 petition only if there are disputed facts set forth by affidavits and a disputed material issue. *Taylor v. United States*, 287 F.3d 658 (7th Cir. 2002). If the factual dispute is immaterial because the governing law is clear, no hearing is necessary. *Id.* Further, the court in which a prisoner files his § 2255 petition

is not required to hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief …." *Sawyer v. United States*, 874 F.3d 276, 278 (7th Cir. 2017) (quoting 28 U.S.C. § 2255(b)). As discussed below, Mr. Pennington is entitled to no relief here, and therefore no evidentiary hearing need be held.

**D. Discussion**

Mr. Pennington argues his conviction constitutes double jeopardy, he received ineffective assistance of counsel, and he did not commit the crime as reported in his PSR at sentencing. The Court addresses and rejects each of his contentions in turn, finding they are unsupported and contrary to his prior sworn statements without good cause for the discrepancy. Though Mr. Pennington moved for his attorney file in the case and that motion was granted, Mr. Pennington has not used the file to provide any further evidence.

***(1) Mr. Pennington's conviction in state and federal court does not violate the Double Jeopardy Clause.***

Mr. Pennington's motion argues briefly that his federal conviction violates the Double Jeopardy Clause, writing his state conviction "resulted from the same information the Government used for his subsequent federal conviction." (DE 30 at 16–17.).[1] The Court can reject that argument out of hand in light of the Supreme Court's decision in *Gamble v. United States*, 204 L. Ed. 2d 322, 139 S. Ct. 1960 (2019). *Gamble* held that the Double Jeopardy Clause

---

[1] This is the only reference to double jeopardy in a paragraph that is otherwise concerned with whether his attorney had a conflict of interest. In an abundance of caution and in light of the Court's obligation to liberally construe pro se filings and address any cause of action, the Court analyzes whether his conviction violates the Double Jeopardy Clause. *See Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009).

contains an exception, the dual-sovereignty doctrine, under which a crime under one sovereign's laws is not "the same offense" for double jeopardy purposes as a crime under the laws of another sovereign. *Id*. at 1964. Thus, a state may prosecute a defendant under state law even if the federal government has prosecuted him for the same conduct under a federal statute. *Id*.; *see also United States v. Johnson*, 65 F.4th 932, 938 (7th Cir. 2023) (rejecting defendant's contention that "federal authorities were merely acting as the state's alter ego" and reiterating that "parallel prosecutions are allowed"). Even if the both the state and federal governments had prosecuted Mr. Pennington for identical conduct (which is not the case at bar), the dual federal-state prosecutions would not violate his rights under the Double Jeopardy Clause. Second, Mr. Pennington's federal criminal case and state cases did not address identical conduct. To begin with, the Kentucky state case could not be duplicitous, because it addresses a different crime against a different underage girl; these are two entirely separate incidents. As to the parallel Indiana state and federal cases arising from the January 2019 arrest, the prosecutions differ because the elements of the crimes differ. *See United States v. Taylor*, 777 F.3d 434, 439–40 (7th Cir. 2015) (no double jeopardy violation where elements of 2422(b) differed from statute criminalizing transferring obscene material to a child under the age of 16 using interstate commerce). Mr. Pennington's federal conviction was for one count of violating of 18 U.S.C. § 2422(b), which has four elements: "(1) use [of] interstate commerce; (2) to knowingly persuade, induce, entice, or coerce; (3) any person under 18; (4) to engage in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." *United States v. Cochran*, 534 F.3d 631, 633 (7th Cir. 2008). In contrast, Mr. Pennington's Indiana state case conviction was for sexual misconduct with a minor in violation of Indiana Code 35-42-4-9 and possession of child pornography in violation of I.C. 35-42-4-4. Indiana Code 35-42-4-9 contains

7

complex provisions governing the criminality of sexual misconduct of a minor; though it governs a number of potential crimes, at no point does it address interstate commerce or inducement, two essential elements of the federal offense. Similarly, the Indiana statute requires specific acts of sexual misconduct, while the federal statute's fourth prong addresses "any sexual activity for which any person can be charged with a criminal offense." Because each crime requires proof of at least one fact not required by the other, the two convictions are not the same offense and principles of double jeopardy are not implicated. *Id*. Mr. Pennington's child pornography conviction is more dissimilar yet: the requirements of I.C. 35-42-4-4 share virtually no elements with the federal statute of conviction outside the requirement of a child under 18 years. Therefore, no Double Jeopardy violation has occurred, and Mr. Pennington is not entitled to any relief on these grounds.

### *(2) Mr. Pennington's attorney did not provide ineffective assistance of counsel.*

Mr. Pennington levies a number of attacks at his counsel's performance. Undergirding his numerous attacks is a belief that his counsel — for reasons almost entirely unexplained — conspired against him with the goal of forcing a plea and depriving him of time served. "The Sixth Amendment guarantees criminal defendants not only the right to the effective assistance of counsel, but also the correlative right to representation that is free from conflicts of interest." *Burkhart v. United States*, 27 F.4th 1289 (7th Cir.), cert. denied, 143 S. Ct. 309, 214 L. Ed. 2d 135 (2022). Mr. Pennington argues his plea was not knowing or voluntary because his attorney conspired with the prosecutor to have him sign a plea before he was ever indicted (depriving him of credit for time served), he was not able to review discovery, he was under stress of facing two indictments, and he was unable to understand the proceedings at his hearing. Mr. Pennington

further argues that his attorney failed to advance his desired arguments and his attorney's estimation of the possible sentence was so removed from his actual sentence that it constituted ineffective assistance of counsel. As motivation for this conspiracy, Mr. Pennington cites to the fact his attorney had known the prosecutor for twenty years. Mr. Pennington's version of events fails to state a legal challenge to his conviction, for the reasons explained below.

### (a) No actual conflict was alleged.

Mr. Pennington argues that his attorney was conflicted because he engaged in discussions with the prosecution, resulting in the delay of Mr. Pennington's case being indicted, and because his attorney had known the prosecutor for over twenty years. Mr. Pennington has not alleged specific facts supporting the inference that his attorney's relationship with the prosecution presented an actual conflict or adversely affected his performance.

"[A] defendant can establish ineffective assistance of counsel by showing that his attorney pressured him to plead guilty because of the attorney's conflict of interest." *Hall v. United States*, 371 F.3d 969, 974 (7th Cir. 2004) (*citing Daniels v. United States*, 54 F.3d 290, 295 (7th Cir.1995)). Included within a criminal defendant's Sixth Amendment right is the right to representation "free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). To prevail, a defendant must first establish the existence of a conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Once the defendant has established such a conflict, he must further establish that the conflict "adversely affected his lawyer's performance." *Id*. at 348. "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). An "adverse

effect" can be demonstrated "by showing that 'but for the attorney's actual conflict of interest, there is a reasonable likelihood that counsel's performance somehow would have been different.'" *United States v. Coscia*, 4 F.4th 454, 475 (7th Cir. 2021) (*citing Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009)).

Mr. Pennington has not shown his attorney's relationship with the prosecution — acquaintance with the prosecuting attorney for twenty years — constituted an actual conflict. It is worth noting that Mr. Pennington only alleges that his attorney knew the prosecutor; he does not even allege the attorneys are close friends. Merely knowing another attorney is not the sort of conflict that renders an attorney conflicted; indeed, several sister courts have found a defense attorney's friendship with the prosecution did not constitute an actual conflict in criminal matters. *See Jones v. United States*, No. 09 C 1148, 2009 WL 2601360, at *7 (N.D. Ill. Aug. 24, 2009); *Salvi v. United States*, No. 18 C 5041, 2019 WL 4918145, at *3 (N.D. Ill. Oct. 4, 2019). The Court therefore declines to find acquaintanceship raises an inference of conflict. *Cf. Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) ("Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence"); *Gillespie v. Niles*, 956 N.E.2d 744, 751 (Ind. Ct. App. 2011) (piercing the corporate veil improper where family friend purchased improperly sold asset without further evidence of control or manipulation); *United States v. Pulgar*, 789 F.3d 807, 815 (7th Cir. 2015) (personal friendship alone is insufficient to support drug trafficking conspiracy). Finally, there is a presumption that a lawyer will "'honor his primary professional responsibility to his clients in the matter at hand.'" *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975). Mr. Pennington has not offered any

specific allegations of fact other than the existence of the relationship and his own conclusory assumptions to rebut this presumption, and so his argument must fail.

*(b) No delay in the indictment existed and no prejudice has been shown.*

Second, Mr. Pennington's primary complaint appears to be that his lawyer's alleged conflict caused him to plea too early, before he had been indicted. As part of this theory, he argues he pled before he had the chance to review discovery, and so his plea was not knowing and voluntary; the Court addresses and rejects this contention in part (c). Mr. Pennington also infers that his early plea delayed his ultimate indictment, perhaps by putting his case on the back burner. Mr. Pennington argues that he was prejudiced by the delay because the indictment caused him to receive no credit for time served on his state case in Kentucky. As an initial matter, this argument is divorced from the evidence in the record; while Mr. Pennington argues he was indicted late, he actually waived his right to indictment and proceeded on an information alone. (DE 10.) There was never any indictment, and Mr. Pennington does not address or challenge the waiver. This alone could defeat Mr. Pennington's claim, but even assuming the federal case could have been adjudicated earlier, he also failed to show prejudice.

Mr. Pennington writes that he would have been eligible for an additional two years of time credit had he been indicted earlier. From February 14, 2019, to February 20, 2021, he was in custody for his Kentucky offense, and he argues his sentence should have been reduced for that time served. This is false. The Court reduced his sentence based on a starting date of February 20, 2021, the day he was transported to Indiana custody upon completion of his Kentucky sentence. The interval between his return to Indiana and his Indiana state sentencing was credited to his Indiana sentence. The BOP determines credit for time served in federal

matters. *See United States v. Ross*, 219 F.3d 592, 594 (7th Cir. 2000). "[Section] 3585(b) forbids the BOP from giving credit for presentence custody when that credit has been applied against another sentence." *Id*. However, under certain circumstances, U.S.S.G. § 5G.1.3(b) indicates the court should adjust the sentence for periods of imprisonment that will not be credited if the term of imprisonment resulted from another offense that is relevant conduct to the offense of conviction. The Court applied this provision in Mr. Pennington's sentencing, reducing his sentence by 13 months for the time served in his undischarged Indiana conviction.

Section 5G1.3 by its own terms, relates only to defendants subject to an "undischarged" or "anticipated" state term of imprisonment. *See generally* § 5G1.3(b) (instructing that if instant sentence is adjusted, it should also run concurrently to the undischarged sentence). By the time Mr. Pennington was sentenced, he had served his entire Kentucky sentence, and so the Kentucky sentence was not eligible for consideration under § 5G1.3. Had Mr. Pennington been indicted earlier and sentenced earlier, he could have received credit for his time served in the Kentucky case. But, because credit under § 5G1.3 is discretionary, it is far from guaranteed that Mr. Pennington would have been afforded more than the 13 months reduction he was already given. A "mere possibility of prejudice does not qualify as actual prejudice." *Prewitt v. United States*, 83 F.3d 812, 818–19 (7th Cir. 1996) (finding no ineffective assistance of counsel where only a possibility existed that defendant would receive a concurrent sentence if 5G1.3 was applied); *see also United States v. Koller*, 956 F.2d 1408, 1416 (7th Cir. 1992) (defendant was not entitled as matter of right to serve convictions concurrently and thus was not prejudiced by a pre-indictment delay). Accordingly, Mr. Pennington has not shown that his case was delayed or that any delay prejudiced him.

*(c) Failure to review discovery does not justify relief.*

Mr. Pennington also argues that his counsel was ineffective because he was not shown discovery until after he had already pled guilty. Mr. Pennington believes that his choice to plead guilty could not have been knowing and voluntary because he did not understand the full extent of the case against him, which he argues he only could do by reviewing the case's discovery. It is well-established that a guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969). The defendant must understand "the substantive elements of the offense, the agreed factual basis for those elements, and the applicable penalties." *United States v. Cruse*, 805 F.3d 795, 805 (7th Cir. 2015). But a lawyer's duty to allow the defendant to himself review the entirety of the discovery record is not in accordance with binding precedent. The Seventh Circuit has repeatedly held that reasonably competent lawyers "attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006) (collecting cases). There is no duty for a lawyer to provide all the discovery materials to the client so he can evaluate the case for himself; indeed, that is antithetical to the lawyer's duties. *See Brady v. United States*, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) ("The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."); *Taylor v. United States*, No. 2:08-CR-88, 2012 WL

266966, at *1 (N.D. Ind. Jan. 30, 2012) (no ineffective assistance of counsel where defendant did not have time to review all discovery documents). Generally speaking, it is counsel's job to summarize the case and communicate the consequences of pleading guilty to the client. As such, counsel's alleged omission in failing to allow Mr. Pennington to review the discovery is not "outside the wide range of professionally competent assistance*." Hutchings v. Unites States*, 618 F.3d 693, 697 (7th Cir.2010). The Court declines to impose a duty upon counsel to allow the client to evaluate their own case in exacting detail.

Even if failure to allow Mr. Pennington to review discovery constituted ineffective assistance, Mr. Pennington testified at his plea hearing that he had reviewed discovery with his attorney. The Court is entitled to presume these statements were true, and Mr. Pennington offers only his bare assertions to the contrary. *See Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000) (defendant's argument "that his counsel's advice rendered his plea unwitting and involuntary is belied by his own statements at the change of plea hearing, which are presumed truthful."). Mr. Pennington's present statements "can be rejected out of hand" because he has not offered a compelling explanation for the contradiction. *See Johnson v. United States*, No. 12-CV-1051-MJR, 2016 WL 335921, *5 (S.D. Ill. Jan. 28, 2016) (*quoting United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)) (rejecting ineffective assistance of counsel claim where defendant argued he was not able to review the evidence against him but testified at his plea hearing that he had done so). Accordingly, no relief is appropriate here.

> (d) Mr. Pennington's motion does not support any finding of duress or incompetence.

Mr. Pennington argues throughout his motion that his plea was rendered involuntary because he was "facing the pressure of two courts at the same time." (DE 44 at 5.) Though duress may render a plea involuntary, not all pressure to plea constitutes duress. *Blackledge v. Allison*, 431 U.S. 63, 64, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) (plea under "misunderstanding, duress, or misrepresentation is a constitutionally inadequate basis for imprisonment); *United States v. Gwiazdzinski*, 141 F.3d 784, 788 (7th Cir. 1998) (pressure from wife to plead guilty did not constitute duress rendering the plea involuntary). The fear that one may be punished and generalized stress related to being the subject of one or more criminal proceedings is not sufficient to constitute duress. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 363 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable and permissible attribute of any legitimate system which tolerates and encourages the negotiation of pleas."). If it were, it would be impossible to voluntarily plead guilty. As such, the Court finds the routine stress incurred by facing two prosecutions did not constitute duress or render Mr. Pennington's plea involuntary.

As above, Mr. Pennington's assertions here contradict his testimony at his plea hearing. A "defendant who has already testified in his Rule 11 hearing that his plea was not coerced faces a heavy burden of persuasion." *Gwiazdzinski*, 141 F.3d at 788. Mr. Pennington offers only that he did not speak up when asked whether his plea was voluntarily because he was instructed by his attorney to answer yes to all the questions and informed that his plea hearing was only a preliminary hearing. There is no presumption that a person of normal abilities is so passive he cannot answer honestly simple yes or no questions. *Cf. United States v. Redig*, 27 F.3d 277 (7th Cir. 1994) (answers in a Rule 11 proceeding presumed true because claims of "extreme

15

passivity" or failure "to function rationally or coherently" were not credible). Accordingly, Mr. Pennington's argument is unconvincing.

In an abundance of caution, the Court considers whether Mr. Pennington was competent to plead guilty and finds he was. "The question of whether a defendant is competent focuses on whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Burt v. Uchtman*, 422 F.3d 557, 564 (7th Cir. 2005). Mr. Pennington's argument immediately collapses given his own statements in this case. Mr. Pennington's own assertions illustrate a defendant who is aware of the elements of his numerous charges, the facts applicable to each, the evidence upon which investigators relied, including highly nuanced details of that evidence, and his and his lawyer's opinion of the strategy of the case. There is no assertion his abilities were vastly different on the day of his plea hearing, nor does the record support any such inference. Clearly, Mr. Pennington possessed sufficient present ability to consult with his lawyer and a rational, factual understanding of the proceedings against him. Further, during Mr. Pennington's Rule 11 hearing, a competency inquiry was conducted, which Mr. Pennington passed without difficulty, and he has not challenged the verity of those answers. (DE 39 at 17.) Mr. Pennington has not offered any specific factual allegations other than the fact of his prosecution to indicate he was under duress or incompetent. As such, he is not entitled to relief on this basis.

> *(e) Mr. Pennington has offered no description of any motion or argument that should have been presented in his case.*

Mr. Pennington argues that his attorney should have filed a motion to suppress and that his attorney failed to make several arguments he advanced. In order to establish ineffective assistance based on failure to file a motion, the defendant must show that the motion would have been meritorious and that he would not have been convicted but for the counsel's error. *Baldwin v. United States*, 2019 WL 5064681, *2 (N.D. Ind. Oct. 9, 2019) (*citing United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005)). However, Mr. Pennington offers no description of the nature of these arguments. Without any information about the foregone arguments, the Court cannot determine whether they would have been meritorious or whether Mr. Pennington would have been convicted had they been advanced. Because these arguments lack necessary detail, they amount only to conclusory allegations insufficient to grant Mr. Pennington relief under § 2255. *Cf. Galbraith*, 313 F.3d at 1008–09 ("[Defendant] presents no scintilla of evidence of the alleged omission of his lawyer."). Without evidentiary support for his claim, Mr. Pennington's case cannot proceed any further. *Id*. at 1009. Therefore, the Court rejects Mr. Pennington's argument. *See Strickland*, 466 U.S. at 690 (holding counsel's conduct must be "outside the wide range of professionally competent assistance"); *Koons*, 639 F.3d at 351 (holding that counsel's conduct must have "amounted to incompetence under prevailing professional norms").

> (f) *Counsel's estimation of Mr. Pennington's sentence did not constitute ineffective assistance of counsel.*

Mr. Pennington argues his counsel's estimate of his potential sentence was so errant that it constituted ineffective assistance of counsel.[2] It is true that one of counsel's duties under *Strickland* is to provide his client with an estimate of the potential sentence he faces. *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990). However, "[i]n this circuit, an attorney's mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim;" the miscalculation must result from a lack of good faith. *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). In this case, Mr. Pennington writes that counsel's estimate of a sentence of twelve years was inaccurate because he was sentenced to 123 months plus ten years supervised release. Mr. Pennington offers no specific allegations of bad faith, instead reiterating his unsupported theory that his attorney was conspiring against him. Counsel's estimation of Mr. Pennington's term of imprisonment was excellent; he estimated twelve years, and Mr. Pennington was sentenced to ten years and three months, which is well within an acceptable range. *See Cieslowski*, 410 F.3d at 359 (estimate that was miscalculated by 42 months of imprisonment was not deficient absent evidence of a lack of good-faith effort). Mr. Pennington appears to assert that counsel's estimate of his sentence was a gross mischaracterization because it did not include his term of supervised release. But the record makes clear Mr. Pennington was informed of the potential term of supervised release at his plea hearing. Judge Gotsch explained in some detail the potential term of supervised release — five years to life — and what supervised release might entail. (DE 39 at 28.) On these facts,

---

[2] In Mr. Pennington's initial motion, he wrote: "Mr. Gibson also misrepresented the plea and its severity. *The imposition of the consequences was never a part of, nor at any time discussed*." (*Id.* at 22.) In his reply, he changes direction, writing: "Mr. Pennington's attorney, Mr. Gibson, expressed that the federal plea would be a maximum of 12 years." (DE 44 at 10.) No reason for this about-face is offered, and they are irreconcilable. Either Mr. Gibson never discussed a potential sentence, or he discussed it and said it was a maximum of 12 years; both cannot be true.

there is no indication Mr. Pennington's plea was not knowing and voluntary. Therefore, no relief will be granted on this basis.

Mr. Pennington has not stated any grounds for finding his counsel was ineffective in his representation.

### *(3) Mr. Pennington cannot challenge the facts of his conviction.*

Mr. Pennington spends a significant portion of his reply brief disputing the facts of conviction summarized by the Government and included in his PSR. It appears Mr. Pennington believes the Government is sensationalizing his crime of conviction for the purpose of this motion; Mr. Pennington does not argue that his attorney failed to challenge these facts, which are included in the PSR.[3] Mr. Pennington is not entitled to relief because his plea agreement waived his right to challenge the facts of his conviction. "It is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013). "A plea agreement that also waives the right to file a § 2255 motion is generally enforceable unless the waiver was involuntary or counsel was ineffective in negotiating the agreement." *Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000). Because the Court rejects Mr. Pennington's involuntariness and ineffective assistance of counsel arguments, the waiver of his right to appeal or contest his conviction on the facts is enforceable, and he may not challenge his conviction on this basis in a § 2255 motion. Moreover, Mr. Pennington faces a second procedural hurdle. Because he did not attack the validity of his

---

[3] A sample: "In addition, the Government also states there was blood on a blanket. The discovery provided to Mr. Pennington indicates blood being found on the driver's side rear passenger seat, but does not mention or disclose anything regarding blood or DNA being found on a blanket." (DE 44 at 3.) To begin with, Mr. Pennington's exhibit does not support his version of events. See DE 44-1 at 3. Even if this challenge was presented at the sentencing hearing, and Mr. Pennington's version — that the blood was in the back seat — was found to be true, that evidence is equally damning, not exculpatory.

conviction in a direct appeal, he can only do so now "if he can first demonstrate either cause and actual prejudice or that he is actually innocent." *Grzegorczyk v. United States*, 997 F.3d at 743, 748 (7th Cir. May 13, 2021), cert. denied, 142 S. Ct. 2580, 213 L. Ed. 2d 1128 (2022). Mr. Pennington has made no such argument, and therefore has waived the challenge to the facts of his conviction.

### E. Conclusion

The Court DENIES Mr. Pennington's motion for relief under § 2255 for the reasons contained herein (DE 30).

SO ORDERED.

ENTERED: September 11, 2023

                              /s/ JON E. DEGUILIO
                              Judge
                              United States District Court